UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY MOORE,

              Petitioner,

    -vs-

ROBERT A. KIRKPATRICK

              Respondent.

_____

**DECISION AND ORDER**
**No. 09-CV-0457T**

## I.   Introduction

*Pro se* petitioner Terry Moore ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered May 6, 2005, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of Sodomy in the First Degree (N.Y. Penal Law ("Penal Law") § 130.50 [4]), Attempted Rape in the First Degree (Penal Law § 110.00, 130.50 [4]), four counts of Sexual Abuse in the First Degree (Penal Law § 130.65 [1]), five counts of Endangering the Welfare of a Child (Penal Law § 260.10 [1]), and three counts of Forcible Touching (Penal Law § 130.52 [2]).[1]

For the reasons stated below, habeas relief is denied and the petition is dismissed.

---

[1]    The three counts of Forcible Touching were later dismissed by the Appellate Division, Fourth Department (see Section "II" below).

## II.  Factual Background and Procedural History

On August 2, 2002, twelve-year-old Alexis Skoczylas ("Skoczylas" or "the victim") went to Petitioner's home at 19 Hecla Street in the City of Buffalo, New York with her parents.  Cherie Loschiavo ("Loschiavo"), the victim's mother, had been friends with Petitioner's wife, Anna Moore, since childhood and their families were friendly.  Petitioner and his wife were in the process of moving, and Loschiavo and Skoczylas were going to help them move. Petitioner's stepdaughter, Daniella Gorman ("Gorman"), was friendly with Skoczylas, and Skoczylas was given permission to stay overnight.  Trial Trans. [T.T.] 54-57.  Skoczylas went to sleep on a couch in the living room and was awakened by Petitioner licking her leg.  T.T. 106-112, 169.  She kicked Petitioner and subsequently got up.  Petitioner then grabbed her wrist, pulled her first into the kitchen, and then into an adjoining garage apartment where he proceeded to push her on a couch.  T.T. 113-115, 117-119. Petitioner touched her, offering her money for sex, stating that he had a condom.  When she refused, he pulled her shorts down and touched her chest and thigh.  Petitioner's penis and tongue also touched her vagina.  T.T. 120-126.  Petitioner put his hand on her mouth and threatened to kill her if she said anything.  T.T. 127-128.

After August 2, 2002, Skoczylas went to Petitioner's home to swim in the pool with Petitioner's stepdaughter.  While Skoczylas

was changing her clothes in the bathroom, Petitioner walked in and touched her breast and rear, kissing her.  When she resisted, he told her not to say anything.  On another occasion in August 2002 when Skoczylas went to Petitioner's home to swim, Petitioner came into the bathroom and touched her breast, rear and vagina. Petitioner stopped this touching when his wife came into the nearby kitchen.  T.T. 128-135.

In November of 2003, Skoczylas was at the home of Richard Frank, her uncle, on St. Lawrence Street in the City of Buffalo, and Petitioner was also there.  T.T. 138-139.  When her uncle left her alone with Petitioner, Petitioner, who was sitting on a couch with a pillow on his lap, lifted up the pillow and showed her that he had an erection that showed through his clothes.  T.T. 139-140.

In December of 2003, Petitioner came to Skoczylas's home on Linden Avenue in the City of Buffalo, where she was, at one point, left alone with him.  Petitioner started to touch her breasts, over and under her clothes, and licked her neck.  Petitioner stopped when she said she was calling the police.  Thereafter, Petitioner left, and Skoczylas did not call the police.  Around Christmas 2003, she told her uncle about the incidents.  T.T. 141-147.

At trial, Loschiavo testified for the prosecution.  She testified that she brought her daughter to Petitioner's house on August 2, 2002 and let her sleep over.  She further testified that

she went to Petitioner's home with her daughter again in August 2002.  T.T. 49, 52-58.

Jan Frank, Loschiavo's sister, testified for the prosecution. She testified that she had known Anna Moore since childhood, and knew Petitioner through his wife.  T.T. 81.  She testified that she was at 19 Hecla Street on August 2, 2002 and that her sister and Skoczylas were also there.  T.T. 86.

Richard Frank, also a witness for the prosecution, testified that Petitioner and the victim were at his house in November 2003, and that the victim told him, in December 2003, of incidents of a sexual nature that occurred between her and Petitioner.  T.T. 249-250.

Stefan Perkowski ("Perkowski"), a psychiatric social worker who did not interview the victim, also testified for the prosecution.   He testified generally concerning child abuse accommodation syndrome, explaining why a child would delay disclosure of an incident or incidents of sexual abuse.  T.T. 269-270, 278, 284-289, 292, 295-296, 301.

Anna Moore testified for the defense.  She testified that she and her family (including Petitioner) did not live at 19 Hecla Street on August 2, 2002, but were staying at 25 Dakota Avenue in the City of Buffalo and had spent the night of August 2-3, 2002 at the Dakota Street address.  T.T. 342-344.  She further testified

that Loschiavo and Richard Frank's wife helped her pack her belongings at 19 Hecla Street on August 2, 2002.  T.T. 343.

At the close of the trial, Petitioner was found guilty as charged.  Subsequently, he was sentenced to concurrent terms of imprisonment for each count, the longest being a twenty-year determinate term.  A five-year period of post-release supervision was also imposed.  Sentencing Mins. [S.M.] 7-9.

By motion dated March 21, 2006, Petitioner sought to vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. L. ("CPL") § 440.10, on the grounds of newly discovered evidence and that material evidence adduced at trial was false.  The Erie County Supreme Court denied that motion on July 28, 2006.  It does not appear Petitioner sought leave to appeal.  See Resp't Ex. D.

On June 8, 2007, the Appellate Division, Fourth Department ("Fourth Department") unanimously modified the judgment by reversing the convictions for forcible touching obtained under counts 7, 10, and 14 of the underlying indictment, and dismissed those counts.[2]  As modified, the judgment was unanimously affirmed. People v. Moore, 41 A.D.3d 1149 (4th Dep't 2007) (Resp't Ex. B); lv. denied, 9 N.Y.3d 879 (2007) (Resp't Ex. C).

---

[2]     The Fourth Department ruled as follows: "We agree with defendant . . . that counts 7, 10, and 14 of the indictment, charging him with forcible touching, are lessor inclusory concurrent counts of counts 6, 9, and 13 of the indictment, charging him with sexual abuse in the first degree.  Although the People are correct that defendant's contention is unpreserved for our review, preservation is not required, and counts 7, 10, and 14 must be dismissed as a matter of law because a verdict of guilty upon the greater count is deemed a dismissal of every lesser inclusory concurrent count . . . .  We therefore modify the judgment accordingly."  Moore, 41 A.D.3d at 1152.

On or about November 14, 2007, Petitioner filed a second CPL
§ 440.10 motion, alleging, *inter alia*, that he received ineffective
assistance of trial counsel, he was mentally incompetent to stand
trial, and that he was denied his right to testify at trial.  That
motion was denied, and leave to appeal was denied.  <u>See</u> Resp't
Ex. E.

This habeas corpus petition followed, wherein Petitioner seeks
relief on the following grounds: (1) ineffective assistance of
trial counsel; (2) prosecutorial misconduct; (3) denial of due
process by the trial court; and (4) Petitioner was unable to
understand the proceedings or assist in his defense due to mental
disease or defect.  <u>See</u> Pet. ¶ 22A-D (Dkt. # 1); Reply (Dkt. # 9).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act
("AEDPA"), a federal court may grant habeas relief to a state
prisoner only if a claim that was "adjudicated on the merits" in
state court "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," 28 U.S.C. § 2254(d)(1), or if it "was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding." § 2254(d)(2).  A state
court decision is "contrary to" clearly established federal law "if

the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>,

696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C.    The Adequate and Independent State Ground Doctrine

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." <u>Cotto v. Herbert</u>, 331 F.3d 217, 238 (2d Cir. 2003) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)); <u>accord</u> <u>Jones v. Stinson</u>, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." <u>Coleman</u>, 501 U.S. at 750; <u>see</u> <u>also</u> <u>Levine</u>, 44 F.3d

at 126; <u>Grey v. Hoke</u>, 933 F.2d 117, 121 (2d Cir. 1991).    A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>accord</u> <u>Coleman</u>, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. <u>See</u> <u>Reed v. Ross</u>, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

## IV. Petitioner's Claims

### 1. Ineffective Assistance of Trial Counsel - Failure to Have Three Jurors Removed and Failure to Effectively Cross-Examine the People's Expert

Petitioner argues, as he did in his second CPL § 440.10 motion, that he received ineffective assistance of trial counsel because: (1) trial counsel failed to have three jurors removed who had allegedly committed perjury; and (2) trial counsel failed to cross-examine the People's expert witness in an effective manner. <u>See</u> Pet., Attach. at 3.    The Erie County Supreme Court rejected this claim on a state procedural ground, pursuant to CPL § 440.10(2)(c).    <u>See</u> Resp't Ex. E (Dec. at 3).    Consequently, as

discussed below, the claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment. <u>See</u> <u>Coleman</u>, 501 U.S. at 729.  Here, the state court rejected Petitioner's claims pursuant to CPL § 440.10(2)(c), finding that sufficient facts appeared in the record to have allowed for review of these issues on direct appeal.  <u>See</u> Resp't Ex. E (Dec. at 3).  The Second Circuit has recognized CPL § 440.10(2)(c) as an adequate and independent state ground sufficient to preclude federal habeas review of a state-court defendant's claims.  <u>See e.g.</u>, <u>Sweet v. Bennett</u>, 353 F.3d 135, 139-40 (2d Cir. 2003); <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997); <u>Aparicio</u>, 269 F.3d at 91 (2d Cir. 1991).  Thus, the state court's reliance on CPL § 440.10(2)(c) to deny Petitioner's claims bars this Court's review of them.  Petitioner does not allege cause and prejudice to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claims will result in a miscarriage of justice.  Accordingly, Petitioner's ineffective assistance of trial counsel claim based on counsel's failure to have three jurors removed and his failure to effectively

cross-examine the People's expert are dismissed as procedurally defaulted.

## 2.   Prosecutorial Misconduct

Petitioner asserts, as he did on direct appeal, that prosecutorial misconduct deprived him of his right to a fair trial. Specifically, he alleges that the prosecutor shifted the burden of proof in her summation when she remarked about the lack of corroborative proof of defense witness Anna Moore's testimony that she and Petitioner moved out of the address in question on August 2, 2002. <u>See</u> Pet. ¶ 22B; Reply at 4.   The Fourth Department rejected this claim on the merits, finding that "[t]he prosecutor's comments were not so egregious as to warrant reversal, nor did they cause such substantial prejudice to the defendant that he was denied due process of law." <u>Moore</u>, 41 A.D.3d at 1151-1152 (internal citations and quotations omitted).   As discussed below, this claim is meritless.

As the Supreme Court has noted, a claim of prosecutorial misconduct during summation requires a court to consider "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).   The issue is not simply whether the prosecutor's comments were "undesirable or even universally condemned." <u>Id.</u>   Accordingly, a mere showing of

prosecutorial misconduct does not entitle a petitioner to habeas relief. Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). Rather, there must be a showing that the petitioner "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Id. In determining whether the petitioner suffered such prejudice, a court must consider: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Id. (citing Gonzalez, 934 F.2d at 424).

Here, the prosecutor's comment on summation was not improper because it constituted a fair response to Anna Moore's testimony and defense counsel's summation. See, e.g., People v. Tankleff, 84 N.Y.2d 992, 994 (1994) (Where "defense had elected to come forward with evidence, the [prosecutor's summation] comments [about defendant's failure to call witnesses to support his claim] did not constitute an impermissible effort to shift the burden of proof."); People v. Overlee, 236 A.D.2d 133, 142-143 (1st Dep't 1997) ("The prosecutor's inquiry as to whether [the defendant] had any documentation . . . to corroborate his testimony" held not improper, because "when a defendant chooses to present affirmative proof, his failure to produce supportive evidence, especially where such proof would ordinarily be available, may be brought to the

jury's attention.") (citing People v. Liang, 208 A.D.2d 401, 402 (1st Dep't 1994), appeal denied, 84 N.Y.2d 869 (1994)); People v. Gathers, 207 A.D.2d 751, 752 (1st Dep't 1994) ("[A] prosecutor's reminder to the jury that an asserted defense is not supported by any evidence does not shift the burden of proof"), appeal denied, 84 N.Y.2d 1031 (1995).

Even if any of the prosecutor's comments were improper, the trial court's instructions to the jury in its final jury charge about the burden of proof and the presumption of innocence were sufficient to cure any improper effects of the prosecutor's comments. T.T. 407-411; see, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1271 (2d Cir.) (trial court's instruction on the burden of proof, which included language that the presumption of innocence remains with the defendant unless the jury finds the prosecution proved its case beyond a reasonable doubt and that the burden of proof never shifts to the defendant, "likely corrected any misperception the jury may have held" as a result of the prosecution's comments.), cert. denied, 519 U.S. 834 (1996); Hardison v. Artus, 06 Civ. 0322 (LTS) (AJP), 2006 U.S. Dist. LEXIS 29445, at *51-52 (S.D.N.Y. May 16, 2006) ("The trial court's charge to the jury on the burden of proof adequately addressed any prejudice that may have resulted from the prosecutor's summation."); Trueluck v. Phillips, 03 Civ. 0904, 2003 U.S. Dist. LEXIS 18638, at *14 (S.D.N.Y. Oct. 20, 2003) ("The court's clear

instruction that the burden on the prosecutor never shifts prevented any misunderstanding of the prosecutor's summation and rendered unnecessary any further corrective charge.").

Finally, there was strong evidence of Petitioner's guilt: the victim positively identified Petitioner as the individual who sexually abused her on numerous occasions.  Her testimony was corroborated by her mother, the mother's sister (Jan Frank), and the victim's uncle.

Accordingly, the Fourth Department's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law.  The claim is therefore dismissed.

### 3.   Denial of Due Process by the Trial Court

Petitioner asserts, as he did on direct appeal, that the trial court denied him due process of law when: (1) it disallowed the defense an adjournment to obtain the testimony of the owner of the residence where Petitioner lived in order to show that Petitioner did not live there during the times the victim claimed the incidents occurred; (2) it "forced" the case to trial only 46 days after arraignment; (3) it curbed the cross-examination of the victim; (4) it did not order the prosecution to further particularize the dates in the indictment; (5) it did not properly inquire concerning Petitioner's request for a new attorney; and (6) it imposed a sentence that was harsh and excessive.  See Pet. ¶ 22C, Attach. at 1.  The Fourth Department rejected these claims

on the merits.[3]  See Moore, 41 A.D.3d at 1150-1152.  As discussed below, Petitioner's claim is meritless.

## A.    Denial of Adjournment

Petitioner argues that he was denied due process when the trial court denied him an adjournment to obtain testimony of the owner of the residence where Petitioner lived in order to show that Petitioner did not live there during the times the victim claimed the incidents occurred.  See Pet. ¶ 22C.  In rejecting this claim, the Fourth Department held that, "[d]efendant failed to demonstrate that a diligent and good faith attempt was made to procure the presence of the witness at trial, that the witness would in fact appear following the adjournment, and that the witness could be produced within a reasonable period of time."  Moore, 41 A.D.3d at 1151 (internal quotations omitted).

This Court agrees with the Fourth Department.  "Determinations on motions for adjournment are 'made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.'"  Rosario v. Burge, 542 F. Supp. 2d 328, 339 (S.D.N.Y. 2008) (quoting Avery v. Alabama, 308 U.S. 444, 446 (1940));  see also Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) ("Scheduling is a

---

[3]     It is unclear to this Court whether the Fourth Department rejected Petitioner's claim that he was denied due process when the trial court "forced" the case to trial only 46 days after arraignment on the merits. Accordingly, the Court reviews that particular issue de novo.  See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

matter that is of necessity committed to the sound discretion of the trial court.").

The record reflects that prior to the testimony of the People's last witness, defense counsel indicated that he had a notarized letter from Lori Lomanto ("Lomanto"), the owner of the residence at 19 Hecla Street, stating that "Terry Moore and Anna Moore were not living at 19 Hecla on the date of August, 2002, [they] moved out of 19 Hecla in July of 2002." T.T. 331. Defense counsel requested that the People stipulate to the admissibility of the letter, since Lomanto was unable to testify because she lived in Arizona. When the court denied admission of the letter, defense counsel asked for a continuance to see if he could secure her attendance. T.T. 331-332. As the Fourth Department correctly found, defense counsel failed to show that he had made a diligent or good-faith attempt to procure the presence of the witness, nor did he show that the witness could be produced in a reasonable time. At the point defense counsel moved for the continuance, the proof was almost concluded, and the availability of the out-of-state witness was unknown. The Court finds that the trial court did not abuse its discretion in determining that an adjournment was not warranted. Accordingly, the Fourth Department's adjudication of this claim was not in contravention of, nor an unreasonable application of, clearly established federal law as determined by

the Supreme Court.  As such, Petitioner is not entitled to habeas relief on this ground and the claim is dismissed as meritless.

**B.   Trial Court "Forced" the Case to Trial**

Petitioner argues that he was deprived of due process when the trial court "forced" his case to trial only 46 days after his arraignment "when it had a trial date already set on another case it was presiding over against [him]."  Pet., Attach. at 1.  He aaserts that "these two cases were somewhat related and the trial court should have allowed the trial to commence on the case that was set for trial well before this case was ever brought to a grand jury."  Id.

This claim is belied by the record, which shows defense counsel and Petitioner had numerous discussions prior to trial with respect to the handling of Petitioner's case.  See Resp't Ex. A (letter from Attorney J. Jordan to Petitioner dated 11/19/04).  Furthermore, and rather notably, at no point in time prior to the trial did Petitioner or his counsel seek an adjournment on the basis of insufficient time to prepare a defense.  Moreover, Petitioner has failed to allege how or in what manner the defense was prejudiced by the alleged "early" commencement of the trial.  He simply asserts, in a conclusory fashion, that "the court placed the defense at an unfair disadvantage by forcing [it] to go to trial in such a short period, when it was not prepared for trial."  Pet., Attach. at 1.  This claim fails to the extent it is based on

a conclusory allegation that it is unsupported by the record.
Because this claim is meritless and provides no basis for habeas
relief, it is dismissed.

### C.   Trial Court Curbed the Cross-Examination of the Victim

Petitioner argues that he was deprived of due process when the
trial court curbed the cross-examination of the victim concerning
her relationship with her mother and father.  See Pet., Attach. at
1.  The Fourth Department rejected this claim, finding that:

> [t]he relationship between the victim and her
> parents has no bearing on the issue whether the
> victim truthfully confided in her uncle with
> respect to defendant's conduct.  The court has
> broad discretion to restrict a defendant from
> cross-examining a witness on matters that are
> irrelevant to any issue to be considered by the
> jury, and we conclude under the circumstances
> of this case that defendant's right of
> confrontation was not violated.

Moore, 41 A.D.3d at 1151-1152 (internal citations and quotations
omitted).

The record reflects that, in the course of a lengthy cross-
examination, defense counsel asked the victim why she disclosed the
sexual abuse to her uncle first.  She responded that it was hard
for a twelve-year-old daughter to tell her mother something like
that.  T.T. 219-220.  She further testified that she and her uncle
had "decided together" that she would tell her parents when she was
ready, which she did around Christmas time.  T.T. 222.  Defense
counsel then asked about her relationship with her mother and her
father.  The prosecutor objected on relevance grounds, and the

trial court sustained the objection.  Defense counsel stated that the line of questioning went to the question of credibility. T.T. 223-224.

The Sixth Amendment guarantees Petitioner's right to confront his accusers.  See Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986).  Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679.  The Confrontation Clause only guarantees an opportunity for effective cross-examination.  It does not insure the defendant the cross-examination will be effective. See id.  Furthermore, "[i]t is settled '[t]he scope and extent of cross-examination lies within the discretion of the trial judge." United States v. Scarpa, 913 F.2d 993, 1018 (2d Cir. 1990).

Here, the trial court properly exercised its discretion. The record reflects that defense counsel was afforded, and indeed took advantage of, the opportunity to cross-examine the victim concerning, among other things, the circumstances of how she disclosed the sexual abuse to her family.  Defense counsel's inquiry into the victim's relationship with her parents did not concern her credibility with respect to whether she had truthfully confided in her uncle regarding Petitioner's conduct.  Thus, any

further inquiry into said matter would have been irrelevant and could have only lead to confusing the jury.  In any event, even if the trial court had erred in prohibiting the line of questioning concerning the victim's relationship with her parents, the error was harmless because it would not have substantially influenced the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 639 (1993).  Thus, the state court's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law.  The claim provides no basis for habeas relief and is therefore dismissed.

> **D.   Trial Court's Refusal to Order Prosecution to Further Particularize Dates in Indictment**

Petitioner argues that the trial court denied him his right to prepare a defense when it refused to order the prosecution to further particularize the dates of the last four incidents. See Pet., Attach. at 1.  The Fourth Department rejected this claim on the merits.  See Moore, 41 A.D.3d at 1151.

Under constitutional due process principles, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); accord United States v. Resendiz-Ponce, 549 U.S. 102 (2007).

-21-

Here, although the last four counts of the indictment specified a period of time -- rather than a specific date -- in which defendant committed the acts at issue, it is clear that the indictment met the constitutional standards referred to above, especially where, as here, the complaining victim was a child. See Rodriguez v. Hynes, CV-94-2010 (CPS), 1995 U.S. Dist. LEXIS 21492, at *12 (E.D.N.Y. Feb. 27, 1995) ("Considering the fact that young victims often do not remember the exact date of when an alleged offense occurred, the time spans in the indictment [charging sexual abuse of a minor] are not unreasonable.") (citing United States v. Bagaric, 706 F.2d 42, 61 (2d Cir. 1983), abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994)); see also Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.") (collecting cases); Fawcett v. Bablitch, 962 F.2d 617, 619 (7th Cir. 1992) (rejecting a due process challenge to an indictment that set forth a six-month period of time during which the defendant allegedly sexually abused a minor child, and finding that the indictment "afforded [the defendant] notice sufficient to permit him to defend against the charge").

In this case, the last four counts of the indictment specified the acts that Petitioner was alleged to have committed and the

period of time during which he committed them. There is no suggestion that the prosecution withheld more detailed information from the petitioner. Nor has Petitioner demonstrated prejudice, despite his conclusory assertion that he was "denied the right to prepare a defense." Pet., Attach. at 1. Accordingly, the state court's adjudication of this claim was not contrary to or an unreasonable application of settled Supreme Court law, and the claim is dismissed.

### E.    Trial Court's Failure to Make an Inquiry with Respect to Petitioner's Request for Substitution of Counsel

Petitioner asserts that the trial court failed to make an inquiry with respect to his request for substitution of counsel. The Fourth Department rejected this claim on the merits, finding that the trial court did not err in failing to make a minimal inquiry. See Moore, 41 A.D.3d at 1151.

The purpose of the Sixth Amendment is to guarantee the defendant a fair trial, though not necessarily a perfect one. Strickland v. Washington, 466 U.S. 668, 689 (1984). Thus, the focus of the Sixth Amendment's protection is "the adversarial process, not . . . the accused's relationship with his lawyer as such." United States v. Cronic, 466 U.S. 648, 657 n. 21 (1984). A defendant does not have a constitutional right to a "meaningful attorney-client relationship," to be completely satisfied with counsel's performance, or to be represented by the lawyer of his choice. See Morris v. Slappy, 461 U.S. 1, 12-15 (1983). The court

presiding over a defendant's trial need only ensure that the defendant has an "effective advocate." Wheat v. United States, 486 U.S. 153, 160 (1988).

The Second Circuit has "recognized that certain restraints must be put on the reassignment of counsel lest the right be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981) (quoting United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.), cert. denied, 375 U.S. 940 (1963)), cert. denied, 456 U.S. 917 (1982)). "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." McKee, 649 F.2d at 933 (quotation marks omitted); accord Norde v. Keane, 294 F.3d 401, 412 (2d Cir. 2002). The Second Circuit has explained that even when a trial court errs in failing to conduct a formal inquiry, the claim is subject to harmless error review. See id.; accord Norde, 294 F.3d at 412 (stating that in order to succeed on this type of Sixth Amendment claim, a petitioner "must demonstrate that he was harmed by the trial judge's failure to inquire" into his reasons for requesting substitute counsel).

Petitioner has not articulated, with any particularity in the habeas petition, what counsel's alleged deficiencies were or why he specifically sought substitution. Based on the manner Petitioner raised this claim in the state court and was addressed by the

Fourth Department, it appears that his request was based primarily upon counsel's alleged failure to file a motion to dismiss the indictment. See Resp't Ex. B. The record reflects, however, that said motion was in fact filed (albeit it denied by the trial court). The record further reflects that a variety of pre-trial relief was also sought on Petitioner's behalf by counsel. See Resp't Ex. A. To this extent, Petitioner cannot demonstrate that he was harmed by the trial court's failure to conduct an inquiry into his request to substitute counsel.

Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply settled Supreme Court law, and the claim is dismissed.

**F.   Trial Court Imposed a Harsh and Excessive Sentence**

Petitioner argues that the trial court imposed a harsh and excessive sentence. See Pet., Attach. at 1. The Fourth Department rejected this claim, finding that "the sentence is not unduly harsh and severe." Morrison, 41 A.D.3d at 1152.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's

denial of habeas corpus."); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing <u>Underwood v. Kelly</u>, 692 F.Supp 146 (E.D.N.Y. 1988), <u>aff'</u> <u>mem.</u>, 875 F.2d 857 (2d Cir. 1989)); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).  Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Petitioner was sentenced to concurrent terms of imprisonment for each count, the longest being a 20 year determinate term.[4] S.M. 7-9.  This term is within the range prescribed by New York law.  <u>See</u> Penal Law §§ 130.50 [4], 130.35 [4].  Accordingly, Petitioner's claim provides no basis for habeas relief and is dismissed.

In sum, Petitioner's claim that the trial court denied him due process is meritless, and is therefore dismissed in its entirety.

## 4.   Petitioner was Unable to Understand Proceedings or Assist Defense Due to Mental Disease or Defect

Petitioner contends, as he did in his second CPL § 440 motion, that "[he] was unable to understand the proceedings or assist in his defense due to mental disease or defect."  <u>See</u> Pet. ¶ 22D; Reply at 5-6.  Specifically, he asserts that he sustained serious head injuries weeks prior to trial and was taking anti-psychotic

---

[4]     To reiterate, the Fourth Department unanimously modified the judgment of conviction concerning the sentences imposed for the three counts of forcible touching.

and anti-depressant medication. _Id._ In deciding the motion, the court rejected the claim on the merits, finding as follows: "[h]aving examined defendant's exhibits there is no basis to conclude that [Petitioner] lacked the capacity to understand and participate in the proceedings." Resp't Ex. E. (Dec. at 5). As discussed below, this claim is meritless.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. _Drope v. Missouri_, 420 U.S. 162 (1975); _Pate v. Robinson_, 383 U.S. 375 (1966). A defendant is incompetent to proceed if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." _Drope_, 420 U.S. at 171.

Competency to stand trial is an issue of fact. A state court's competency determination, therefore, is entitled to a presumption of correctness on habeas review. _Demosthenes v. Baal_, 495 U.S. 731, 735 (1990); _see also Harris v. Kuhlmann_, 346 F.3d 330, 351-52 (2d Cir. 2003). In order to succeed on a habeas claim challenging a state factual determination, a petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(i). Petitioner has failed to do so.

In furtherance of this claim, Petitioner cites to the same exhibits which he presented in support of his CPL § 440 motion,

including a report from Emergency Services at Erie County Medical Center, several physician's reports from the Erie County Correctional Facility, a medication/psychiatric renewal form, and various drug prescriptions.  See Reply at 5-6.  These documents, however, do not prove that any head injury Petitioner sustained prior to trial and/or his medications actually impaired his ability to understand the nature of the proceedings and to participate in his defense.  Nor has Petitioner cited anything in the trial record to support his claim that he did not understand the nature of the proceedings against him, that he could not consult with counsel, or that he could not assist in his defense.  Drope, 420 U.S. at 171. The record gives no indication that Petitioner was irrational, or possessed a demeanor that would have alerted the trial court to a mental health issue.  See Drope, 420 U.S. at 180.  Since no factors arose during trial that would have called Petitioner's competency into doubt, the trial judge was not presented with any reasonable cause upon which to question Petitioner's competence to participate in the proceedings.  See United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995) ("The Due Process Clause [does not] require[] a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent.") (citing Pate, 383 U.S. at 385-86).  Additionally, defense counsel never moved for a competency examination or called Petitioner's competency into

question.  See Pate, 383 U.S. at 379 n.13 ("The conclusive factor [regarding petitioner's competence] is that Robinson's own lawyers, the two men who apparently had the closest contact with the defendant during the proceedings, never suggested he was incompetent to stand trial and never moved to have him examined on incompetency grounds during trial.").

Accordingly, this Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied settled Supreme Court law.  Petitioner's competency claim provides no basis for habeas relief and is therefore dismissed.

## 5.   Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel based on, inter alia, the following: (1) counsel only interviewed him once and failed to respond to his calls or letters; (2) failed to file an alibi notice;  (3) failed to call witnesses; (4) failed to obtain and introduce the utility shut-off records for 19 Hecla Street; (5) failed to request a competency hearing; (6) failed to call an expert witness; and (7) failed to allow Petitioner to testify.  See Pet. ¶ 22A; Reply at 1-4.  Each of these claims was denied on the merits on direct appeal or in Petitioner's second CPL § 440.10 motion.  See Resp't Exs. B, E.  As discussed below, this claim is meritless.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must

show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690.

**A.   Failure to Interview and Respond to Petitioner**

Petitioner alleges that he received ineffective assistance of trial counsel because "counsel conducted one [sic] fifteen minute interview with [him] from arraignment to trial[,]" and failed to return "the numerous messages" left by him and his wife. Pet. ¶ 22A. This claim is belied by the record. Counsel's letter to Petitioner dated November 19, 2004 indicates that Petitioner and counsel had numerous discussions prior to trial regarding Petitioner's case. <u>See</u> Resp't Ex. A (letter from Attorney J.

Jordan to Petitioner dated 11/19/04).  This portion of Petitioner's ineffective assistance of trial counsel claim provides no basis for habeas relief, and is therefore dismissed.

**B.    Failure to File an Alibi Notice**

Petitioner argues that he received ineffective assistance of trial counsel because counsel failed to file an alibi notice regarding the testimony of Petitioner's wife, Anna Moore.  See Pet. ¶ 22, Attach at 1.

Here, the Court need not examine the reasonableness of counsel's decision not to file an alibi notice since Petitioner cannot demonstrate that he was prejudiced by counsel's failure to do so.  See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").  That is, notwithstanding the filing of the notice, Anna Moore was permitted to testify concerning Petitioner's whereabouts on the night of the alleged first offense.  She testified that the family completed their move from 19 Hecla Street on August 2, 2002, and that the entire family spent the night at their new residence at 25 Dakota Street.  To this extent, Petitioner cannot demonstrate that there is a reasonable probability that the outcome of his trial would have been different, but for, counsel's failure to file an alibi notice.  As such, this portion of Petitioner's ineffective

assistance of trial counsel claim provides no basis for habeas
relief, and is dismissed.

## B.    Failed to Interview and Call Witnesses

Petitioner argues that he received ineffective assistance of
trial counsel because trial counsel failed to interview and call
ten witnesses.[5]   See Pet. ¶ 22A.   He argues that these ten
individuals could have assisted his defense.   According to
Petitioner, some of these individuals would have testified that
Petitioner and his family moved out of 19 Hecla Street prior to
August 8, 2002, thereby showing that "it would have been impossible
for any crimes to have taken place at this address." Pet., Attach.
at 2.   The testimony of the remaining individuals, according to
Petitioner, would have cast doubt on the victim's credibility by
showing, inter alia, that she had a propensity to lie.   Id.

The decision to call, or not call, a witness is a classic
example of trial strategy.   "The tactical decision of whether to
call a specific witness -- even ones that might offer exculpatory
evidence -- is ordinarily not viewed as a lapse in professional

---

[5]       Those witnesses are as follows: Daniella Gorman, Laurie Lomonto,
Ray McKnight, Maria Favata, Josie Aiello, Carla Brice, John Roberts, Denise
Amonti, Jason Skoczylas, and Sammy Frank.   See Pet., Attach. at 2.   As
Respondent correctly points out, the portion of Petitioner's claim challenging
counsel's failure to investigate/call Ray McKnight, Josie Aiello, Carla Brice,
John Roberts, and Denise Amonti is unexhausted because it is raised for the
first time in the habeas petition.   The Court finds this unexhausted portion
of his ineffective assistance of trial counsel claim "patently frivolous" and
therefore dismisses it on the merits pursuant to 28 U.S.C. § 2254(b)(2).   See,
e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572
(S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist.
LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008
U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F.
Supp. 2d 544 (W.D.N.Y. 2002).

representation." <u>United States v. Schmidt</u>, 105 F.3d 82, 90 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 846 (1997); <u>see also</u> <u>United States v. Romero</u>, 54 F.3d 56, 60 (2d Cir. 1995).   However, unexplained failures to call credible alibi witnesses cannot be considered reasonable trial strategy.   See <u>Pavel v. Hollins</u>, 261 F.3d 210, 226 (2d Cir. 2001).   Moreover, the failure to investigate potential alibi witnesses is particularly egregious.   See <u>id.</u> at 220-22 & nn.13-14;   see <u>also</u> <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199-204 (2d Cir. 2001).

Petitioner has failed to show that counsel's performance was constitutionally deficient within the meaning of <u>Strickland</u>.

With respect to Lomanto[6] and Favata[7], Petitioner cannot show that he was prejudiced by counsel's failure to call them as witnesses.  He asserts that the testimony of these individuals, who both provided sworn letters, supported his position that he and his family had moved out of the residence on the date the victim claimed Petitioner sexually abused her at his residence.  However, even if Petitioner had moved out of the residence at the time Lomanto and Favata indicated he had, such testimony does not establish that Petitioner was never at 19 Hecla Street in August

---

[6]    The Court notes that counsel did, in fact, attempt to call Lomanto as a witness at trial, but was prevented from doing so by the trial court (see Section "IV, 3, A" above).

[7]    Favata's sworn letter stated that Petitioner and his wife were not living at 19 Hecla Street during the month of August 2002, and that "she [knew] this to be true because on August 1, 2002, and a few days following I was at the residence on Hecla [with] [LoManto] cleaning."  <u>See</u> Resp't Ex. A (letter of 11/15/07).

when the crimes occurred.  Thus, he cannot demonstrate that he was prejudiced by counsel's failure to call Lomanto and Favata as witnesses.

With respect to Gorman -- who provided a sworn statement indicating that the victim never slept at her house or attended any pool parties and that she and the victim were not friends -- it was not unreasonable for counsel not to have called her as a witness. Based on the record before this Court, counsel could have reasonably concluded that, as Petitioner's stepdaughter, Gorman would not have been a credible witness.  Moreover, her testimony would have been largely cumulative to Anna Moore's.

With respect to the remaining individuals, Petitioner has failed to provide affidavits or declarations from any of them showing what their testimony would have been. See Schulz v. Marshall, 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y. 2007) ("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases). Nor has Petitioner made any showing that any of these remaining individuals would have been available to testify.  Therefore, Petitioner has not shown that counsel's failure to investigate or call witnesses was constitutionally deficient representation, or that it resulted in prejudice to Petitioner.

Accordingly, this portion of Petitioner's ineffective assistance of counsel claim is meritless and is dismissed.

### D. Trail Counsel's Failure to Obtain Utility Shut-Off Notices

Petitioner argues that he received ineffective assistance of trial counsel because counsel failed to obtain the utility shut-off records for 19 Hecla Street, showing that utilities at the premises were terminated on August 5 and August 8, 2002. He asserts that these records "would have shown a family of five would not have shut off the utility if it intended to continue to live at this address[,] . . . placing doubt to the credibility of [the] [victim]." Pet., Attach. at 3.

Initially, the Court notes that the utility shut-off records for 19 Hecla Street were never produced by the defense, and Petitioner's conclusions regarding the probative value of these records is therefore entirely speculative. In any event, even assuming the utilities were shut off, such information does not prove that the victim and Petitioner were not at the address in question when the crimes occurred. To this extent, Petitioner cannot show that it was unreasonable for trial counsel not to have obtained the utility shut-off notices for 19 Hecla Street. Moreover, he cannot demonstrate that but for counsel's failure to obtain these records, there is a reasonable probability that the outcome of his trial would have been different. Accordingly, this

portion of Petitioner's ineffective assistance of trial counsel claim provides no basis for habeas relief and is dismissed.

**E.    Trial Counsel's Failure to Request a Competency Hearing**

Petitioner asserts that he received ineffective assistance of trial counsel because counsel failed to request a competency hearing.  See Pet., Attach. at 3; Reply at 5-6.

As discussed at Section "IV, 4" above, Petitioner's claim that he was mentally incompetent to stand trial lacks merit.  As such, it would have been futile for counsel to have requested a competency hearing, and counsel's failure to do so cannot be considered unreasonable.  Accordingly, this portion of Petitioner's ineffective assistance of trial counsel claim provides no basis for habeas relief and is dismissed.

**F.    Trial Counsel's Failure to Consult with or Call an Expert Witness**

Petitioner asserts that trial "counsel failed to get an expert witness to testify for the defense."  Pet., Attach. at 3.

The Second Circuit has held that under certain circumstances involving sexual offenses, the failure to call an expert witness may be grounds for an ineffective assistance of counsel claim.  See Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001);  Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001);  Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005).  Here, however, counsel's decision not to consult with a medical expert was not objectively unreasonable, nor did it prejudice the Petitioner.

-36-

The record reflects that, on direct examination, Perkowski testified generally concerning child abuse accommodation syndrome, explaining why a child would delay disclosure of an incident or incidents of sexual abuse.  He specifically indicated that he had not treated the victim in this case and had no personal knowledge regarding the facts of this case.  T.T. 277.  On cross-examination, Perkowski confirmed that he never treated the victim in this case, did not know her, did not review any paperwork in connection with the case prior to testifying, and did not discuss any of the details of the allegations in this case with the prosecutor before he testified.  T.T. 315.  Defense counsel further elicited from Perkowski that, although "extremely rare[,]" children have been known to make up allegations of sexual abuse.  T.T. 317.  In this regard, Perkowski's testimony was not particularly detrimental to Petitioner's case, and simply offered a theory as to why a child may delay disclosure of an incident or incidents of sexual abuse.  Notably, Petitioner does not indicate what an expert witness would have testified to had counsel called one, nor does he indicate how testimony from said witness would have assisted his defense.  Indeed, had defense counsel called his own expert witness, the testimony would likely have established essentially the same information that defense counsel was able to demonstrate on cross-examination.  See e.g., McHerrin v. Poole, No. 06-CV-6095(MAT), 2009 U.S. Dist. LEXIS 111355, *13 (W.D.N.Y.

Dec. 1, 2009) ("The record indicates that trial counsel cross-examined [the prosecution's expert] about the absence of physical trauma in light of the victim's allegation of rape. In particular, counsel elicited testimony from [the expert] that there were no objective findings in the victim's medical records . . . . Had Petitioner's trial counsel called his own medical witness, the testimony would have likely established similar facts that counsel was able to demonstrate on cross-examination.").

Moreover, the instant case is distinguishable from both Lindstadt and Pavel wherein the failure to call a medical expert was an error which, in combination with other errors, amounted to ineffective assistance of counsel. See e.g., Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors.") (citing Lindstadt, 239 F.3d at 204). Even if the Court were to fault counsel's strategic decision not to call its own expert medical witness, in the aggregate, counsel's conduct did not rise to the level of ineffective assistance under Strickland as discussed herein. Strickland requires the petitioner to demonstrate that defense counsel erred so seriously "that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 694. Petitioner makes no such showing, nor can he establish that but for counsel's deficiency, the result of his trial would likely have been different. As a

result, the state court did not unreasonably apply or rule contrary to settled federal law as set forth by <u>Strickland</u>.  This portion of Petitioner's ineffective assistance of counsel claim provides no basis for habeas relief and is therefore dismissed.

**G.  Trial Counsel's Failure to Allow Petitioner the Opportunity to Testify**

Petitioner asserts that counsel "failed to allow [him] the chance to testify . . . ."  Pet., Attach. at 3.

Indeed, the right to testify is well-grounded in the Fifth, Sixth and Fourteenth Amendments.  <u>Rock v. Arkansas</u>, 483 U.S. 44, 51, 52 (1987).  The decision whether a defendant should testify at trial is for the defendant himself to make, and "trial counsel's duty of effective assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right."  <u>Brown v. Artuz</u>, 124 F.3d 73, 74 (2d Cir.1997), <u>cert. denied</u> 522 U.S. 1128 (1998).  When a defendant claims that his counsel was ineffective for preventing him from testifying or for failing to advise him concerning the right to testify, the claim should be analyzed under <u>Strickland</u>'s two-prong test.  <u>Id.</u> at 74, 79.  However, a "'barebones assertion' that his attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify a hearing or other action on a petitioner's claim that his right to testify in his own defense was denied him."  <u>Hammouda v. United States</u>, No. 02-CV-3103, 2006 U.S. Dist. LEXIS 18664, at *18 (quoting <u>Scire</u>

v. United States, No. 96-CV-3446, 1997 U.S. Dist. LEXIS 22284
(E.D.N.Y. Mar. 24, 1997)).

Here, there is nothing in the record, nor does Petitioner
point to anything outside the record, that suggests that he wished
to testify and that counsel, in some way, prevented him from doing
so. In any event, Petitioner has offered no evidence demonstrating
that his failure to testify prejudiced his defense. See Brown, 124
F.3d at 79-81 (defendant claiming ineffective assistance due to
counsel's failure to advise about personal right to testify must
still establish prejudice under second prong of Strickland). He
does not state what his testimony would have been or how his
testimony would have assisted his defense. Additionally, had
Petitioner taken the stand, he would have been subject to cross-
examination on several prior convictions,[8] which clearly would not
have been favorable to his defense. Accordingly, this portion of
Petitioner's ineffective assistance of counsel claim is meritless
and is dismissed.

In sum, the Court finds that the state court's adjudication of
Petitioner's ineffective assistance of counsel claim was not
contrary to or an unreasonable application of settled Supreme Court
law. As such, this claim provides no basis for habeas relief and
is therefore dismissed in its entirety.

---

[8]     Immediately prior to the commencement of trial, the court issued a
Sandoval ruling with respect to Petitioner's prior convictions. T.T. 15-18.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    March 30, 2011
          Rochester, New York